```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                                    )
JAMES T. COVINGTON,                 )
                                    )
            Plaintiff,              )
                                    )
       and                          )
                                    )
ALFREDA TURNBOW,                    )
                                    ) Civil Action No. 9-30 (EGS)
            Intervenor-             )
            Plaintiff,              )
                                    )
       v.                           )
                                    )
JP MORGAN CHASE, et al.,            )
                                    )
            Defendants.             )
_____ )
```

## MEMORANDUM OPINION

Plaintiff James Covington and intervenor-plaintiff Alfreda Turnbow bring a number of claims against the defendants, JP Morgan Chase and Deutsche Bank, related to a home mortgage loan. Pending before the Court is defendants' motion for summary judgment and for judgment on the pleadings. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **GRANTS** defendants' motion.

## I.  BACKGROUND

### A.  Factual Background

On June 26, 2006, James Covington and Alfreda Turnbow obtained a $475,000 home mortgage loan ("the Loan") from Long Beach Mortgage Company. *See* Mortgage Note, ECF No. 62-2 at 1. The

mortgage was secured by a deed of trust on the property, which is located at 7247 15th Place, NW in Washington, D.C ("the Property"). *See* Deed of Trust, ECF No. 62-3. On July 1, 2006, Long Beach Mortgage Company was merged into Washington Mutual Bank ("WaMu"). *See* Prospectus, ECF No. 74-2 at 7.

On August 1, 2006, WaMu and Deutsche Bank entered into a Pooling and Servicing Agreement regarding a number of mortgage loans. *See* Pooling & Servicing Agreement, ECF Nos. 74-6, 74-7, 74-8. That agreement provided that the Long Beach Mortgage Loan Trust 2006-7 ("the Trust") would become the owner of the Loan, that Deutsche Bank would be trustee, and that WaMu would remain the Loan's servicer. *See* Pooling & Servicing Agreement, ECF No. 74-6 at 35, 69, 74, 81. The Agreement also prohibited the Trust from "guarantee[ing] or otherwise assum[ing] liability for the debts of any other party." *Id.* at 97. Plaintiffs' Loan was sold to the Trust on August 24, 2006.[1]

On July 9, 2008, James Covington and Ronald Anderson—an individual who was not party to the original mortgage—executed a loan modification with WaMu. *See* Modification, ECF No. 62-4. In

---

[1] To the extent there was ever doubt that plaintiff's particular loan was sold to the Trust, the unrebutted record dispels it. The Mortgage Loan Purchase Agreement provides that the loans to be sold are listed on the "Closing Schedule," which "shall be the Mortgage Loan Schedule under the Pooling and Servicing Agreement." *See* Mortgage Loan Purchase Agreement, ECF No. 74-9 at 2. Defendants submitted an excerpt of the Mortgage Loan Schedule, which lists plaintiffs' Loan as one of those that was sold to the Trust. *See* Mortg. Loan Schedule, ECF No. 74-10 at 2.

signing the modification, Covington and Anderson affirmed that they were "the current owner[s] of record of the Subject Property," and that "[n]o other persons or business entities have ownership, management, or control of the Subject Property." *Id.* at 3. Nonetheless, Alfreda Turnbow—who was a party to the mortgage—was not a party to the modification. *See id.* at 2.

During August 2008, Alfreda Turnbow repeatedly contacted WaMu to notify it that the Loan had been modified without her involvement or consent. *See* Declaration of Kendall Foster ("Foster Decl."), ECF No. 98-1 ¶¶ 3.A–F; Exs. A–F to Foster Decl. On August 15, 2008, she submitted to WaMu an identity-theft affidavit, which stated that James Covington, Ronald Anderson, and Ronald Anderson's wife, Aquanetta Anderson, had stolen her identity to obtain the loan modification. *See* Identity Theft Aff., ECF No. 98-1 at 13–14. Ms. Turnbow contacted WaMu once more on September 23, 2008, and was informed that the modification had been rescinded. *See* Foster Decl. ¶ 3.F; Ex F. to Foster Decl.

Meanwhile, WaMu entered into receivership and the Federal Deposit Insurance Corporation ("FDIC") took over as receiver. *See* Purchase & Assumption Agreement, ECF No. 62-5 at 6. JP Morgan Chase then agreed to purchase WaMu and, on September 25, 2008, entered into a Purchase and Assumption Agreement with the FDIC. *See id.* The Agreement provides that JP Morgan Chase

"specifically assume[d] all mortgage servicing rights and obligations of [WaMu]." *Id.* at 13. JP Morgan Chase also agreed, "[s]ubject to Section[] 2.5," to assume "all of the liabilities of [WaMu] which are reflected on the Books and Records of [WaMu]." *Id.* Section 2.5 limited JP Morgan Chase's assumption of liability with respect to "Borrower Claims":

> [A]ny liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by [WaMu] prior to failure, or to any loan made by a third party in connection with any loan which is or was held by [WaMu], or otherwise arising in connection with [WaMu's] lending or loan purchase activities are specifically not assumed by [JP Morgan Chase].

*Id.* at 14.

**B.   Procedural History**

In 2007, Alfreda Turnbow sued Ronald and Aquanetta Anderson in the Superior Court of the District of Columbia. James Covington was joined as a necessary party because the suit sought to adjudicate "the status of title to" the Property. *Turnbow v. Anderson*, No. 2007-CA-5895, slip op. at 1 (D.C. Super. Ct. July 20, 2009). The crux of the dispute was whether the Andersons had been granted an interest in the Property, even though they were not party to the mortgage. On January 8, 2009, while that

4

lawsuit was pending, James Covington, Ronald Anderson, and Aquanetta Anderson filed this lawsuit against JP Morgan Chase and Deutsche Bank regarding the origination and servicing of the Loan, and the execution of the modification.

On July 20, 2009, the Superior Court issued a final decision in Alfreda Turnbow's lawsuit, finding that "Aquanetta Anderson and Ronald Anderson do not hold any legal title to the subject property" and "have no equitable interest in the property." *Id.* at 19–20. The Court rejected the Andersons's claim that Alfreda Turnbow had granted them a quitclaim deed because the document they relied on was "a transparent and amateurish fraud." *Id.* at 12. In any event, the Court held, such a deed would be "an illegal conveyance" because WaMu retained an interest in the Property under the deed of trust, giving Ms. Turnbow "no right to transfer her interest in the property to anyone." *Id.* at 14.

The day after the Superior Court's decision, the plaintiffs in this case—the Andersons and Mr. Covington—moved for partial summary judgment. Pls.' Mot. for Summ. J., ECF No. 10. The defendants responded with a motion for summary judgment on September 4, 2009, claiming that judgment should be entered against the Andersons due to their lack of a legal interest in the property, and also arguing that Alfreda Turnbow was a necessary party under Federal Rule of Civil Procedure 19. *See* Defs.' First Mot. for Summ. J., ECF No. 16 at 9–10, 12–14.

Proceedings before this Court were subsequently stayed pending an appeal of the Superior Court's decision. On July 11, 2011, the D.C. Court of Appeals affirmed the Superior Court's ruling that Ronald and Aquanetta Anderson "have neither a legal nor equitable interest in the property located at 7247 15th Place, N.W." and "that the alleged quitclaim deed was fraudulent." *Anderson v. Turnbow*, No. 9-CV-905, slip op. at 1, 5 (D.C. July 11, 2011).

Accordingly, on September 14, 2011, this Court entered summary judgment against the Andersons on all of their claims, holding that they were precluded by "the doctrine of collateral estoppel." *See* Minute Order of September 14, 2011. The Court also dismissed Mr. Covington's claims, subject to the filing of an amended complaint joining Alfreda Turnbow. *See id.*

On October 13, 2011, Mr. Covington filed an amended complaint. *See* Second Am. Compl., ECF No. 27.[2] The Second Amended Complaint alleges seven "counts," which raise overlapping legal claims. *See id.* ¶¶ 19-65. The legal claims challenge alleged wrongdoing in connection with: (1) the origination and servicing of the Loan (including allegations that the defendants did not make required disclosures, included illegal terms in the Loan,

---

[2] Plaintiff refers to this as his Third Amended Complaint, while defendants note that it is the third complaint that he has filed, making it the Second Amended Complaint. The parties are referring to the same document, which the Court calls the Second Amended Complaint.

6

accepted kickbacks, and fraudulently induced Mr. Covington to enter the Loan); (2) the modification agreement (including allegations that the defendants breached that agreement, failed to make required disclosures, and fraudulently induced Mr. Covington to enter the agreement); and (3) a foreclosure action. *See id.* In addition, Mr. Covington appears to request a declaratory judgment that the modification is valid and that defendants do not have the right to enforce the Loan. *See id.* ¶¶ 46-53. Ms. Turnbow filed a complaint on February 21, 2012, which consists largely of statements indicating her agreement with the Second Amended Complaint. *See* Turnbow Compl., ECF No. 32.

On August 8, 2012, the defendants filed the pending motion for summary judgment and judgment on the pleadings. *See* Mem. in Supp. of Mot. for Summ. J. ("Mem."), ECF No. 62-1. Ms. Turnbow and Mr. Covington subsequently filed separate, nearly identical, motions seeking permission to conduct discovery on a wide array of topics. *See* Turnbow Mot. for Discovery, ECF No. 65; Covington Mot. for Discovery, ECF No. 66. The Court granted these motions in part and ordered the production of certain documents related to the assumption of plaintiff's specific loan and subsequent communications related to the Loan. *See* Order, ECF No. 71 at 1-2. The Court also stayed defendants' motion for summary judgment pending mediation. *See id.* at 2.

While mediation was ongoing, Mr. Covington and Ms. Turnbow filed similar motions seeking leave to take depositions of "a J.P. Morgan Chase custodia[n] of records and an Executive member who are familiar with the purchase of the Washington Mutual Bank and the Purchase and Assumption Agreement." Covington Mot., ECF No. 78 at 1; Turnbow Mot., ECF No. 79 at 1. On August 26, 2013, after mediation had concluded, the Court denied the motions and ordered the parties to complete briefing of defendants' motion for summary judgment. *See* Order, ECF No. 96 at 2. Mr. Covington filed his opposition brief on October 15, 2013. *See* Opp. to Mot. for Summ. J. ("Opp."), ECF No. 97.[3] The defendants filed their reply brief on October 31, 2013. *See* Reply in Supp. of Mot. for Summ. J. ("Reply"), ECF No. 98.

## II. STANDARD OF REVIEW[4]

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56;

---

[3] Ms. Turnbow did not file an opposition. Although Mr. Covington's filing purported also to be on her behalf, Mr. Covington is not an attorney. Accordingly, the motion is **GRANTED AS CONCEDED** as to Ms. Turnbow. In any event, her claims fail for the same reasons that Mr. Covington's claims fail.

[4] The defendants move for summary judgment and for judgment on the pleadings. In light of the introduction of evidence by all parties, the Court considers the entire record and treats the motion as one for summary judgment.

8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. To survive a motion for summary judgment, however, the requester "must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the nonmoving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**III. DISCUSSION**

The vague and overlapping nature of Mr. Covington's claims render them unsuitable to a count-by-count analysis. Instead, the Court addresses them in groups: (1) plaintiff's claims that predate the purchase of WaMu by JP Morgan Chase; (2) plaintiff's claims regarding an alleged breach of the modification agreement; (3) plaintiff's foreclosure-related claims; and (4) plaintiff's apparent request for a declaratory judgment.[5]

---

[5] In his opposition, plaintiff raised new legal claims that were not part of his Second Amended Complaint. *See* Opp. at 25–34;

### A.  Plaintiff's Pre-September 25, 2008 Claims.

Plaintiff seeks to hold the defendants responsible for wrongdoing in connection with the origination of the Loan, the subsequent servicing of the Loan, and the execution of the modification. *See* Second Am. Compl., ECF No. 27 ¶¶ 22, 25, 31–32 (p. 12), 33 (pp. 13–14), 34–36, 42–45, 48, 55–65. Judgment must be granted to defendants on these claims because plaintiff provided nothing to link Deutsche Bank to the relevant actions, and the Purchase and Assumption Agreement bars the claims against JP Morgan Chase.

> *1.  The Record Contains No Facts Linking Deutsche Bank to the Alleged Wrongdoing.*

The allegations related to the origination of the Loan predate Deutsche Bank's involvement, which began when the Loan was sold to the Trust. *See* Pooling & Servicing Agreement, ECF Nos. 74-6, 74-7, 74-8. Moreover, the Pooling and Servicing Agreement disclaimed the assumption of any liabilities by the Trust. *See* Pooling & Servicing Agreement, ECF No. 74-6 at 97. Plaintiff has offered neither evidence nor argument to show that Deutsche Bank is legally responsible for prior wrongdoing by other parties.

Plaintiff's allegations regarding the servicing of the Loan and the execution of the modification agreement concern events

---

Reply at 15–17. "To the extent that plaintiff seeks to add [legal] claims . . . by raising them for the first time in his opposition . . . the attempt must be rejected." *Banks v. York*, 515 F. Supp. 2d 89, 97 n.2 (D.D.C. 2007)).

that occurred after Deutsche Bank became trustee, but the record is devoid of evidence linking Deutsche Bank to the servicing of the Loan or the execution of the modification, much less the specific actions plaintiff challenges. The Court therefore **GRANTS** summary judgment to Deutsche Bank on these claims.[6]

>  2. *The Purchase and Assumption Agreement Bars Claims Against JP Morgan Chase for WaMu's Conduct.*

JP Morgan Chase could conceivably be liable for these claims because although it did not become the servicer of the Loan until September 25, 2008, it assumed some of WaMu's liabilities. *See* Purchase & Assumption Agreement, ECF No. 62-5 at 6. The Purchase and Assumption Agreement, however, indicated that JP Morgan Chase would not assume:

> [A]ny liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by [WaMu] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [WaMu], or otherwise arising in connection with [WaMu's] lending or loan purchase activities are specifically not assumed by [JP Morgan Chase].

*Id.* at 14. The Agreement thus "leaves the FDIC as the responsible party with respect to [borrower] claims." *Hilton v.*

---

[6] Deutsche Bank argues that none of plaintiff's claims against it may stand for the same reason. *See* Mem. at 11. Deutsche Bank is correct that plaintiff has not introduced facts to link it to the alleged foreclosure and breach of the modification agreement. In any event, judgment must be granted for Deutsche Bank on these claims for the reasons discussed in Parts III.B–C.

*Wash. Mut. Bank*, No. 09-1191, 2009 WL 3485953, at *3 (N.D. Cal. Oct. 28, 2009) (quotation marks omitted); *see also Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) ("[w]hen Washington Mutual failed, Chase . . . acquired many assets but its agreement with the FDIC retains for the FDIC any liability associated with borrower claims") (quotation marks omitted); *Dubois v. Wash. Mut. Bank*, No. 09-2176, 2010 WL 3463368, at *3 (D.D.C. Sept. 3, 2010). Accordingly, all of plaintiff's claims regarding WaMu's conduct are barred against JP Morgan Chase.[7] The Court therefore **GRANTS** summary judgment to JP Morgan Chase with respect to those legal claims.

JP Morgan Chase is incorrect, however, to argue that the Purchase and Assumption Agreement bars all of plaintiff's claims. *See* Mem. at 7-10. Plaintiff's allegations regarding breaches of the modification agreement, Second Am. Compl., ECF No. 27 ¶¶ 23, 25(d), 27, 33 (p. 12), and his foreclosure-related allegations, *id.* ¶¶ 20, 23, 25(d), 28, 47, 50-51, appear to address events after September 25, 2008, and his request for declaratory relief is prospective. *Id.* ¶¶ 21, 27-28, 46-53.

---

[7] Plaintiff's sole argument on this point relies on a brief filed by Deutsche Bank addressing a distinct issue in another case. *See* Opp. at 7 (citing Pl.'s Opp. to Mot. to Dismiss, *Deutsche Bank v. FDIC*, No. 9-cv-1656-RMC (D.D.C. Jan. 14, 2011), ECF No. 56). That brief addressed a dispute over the liability assumed by JP Morgan Chase, but did not relate to liability for borrower claims, which are specifically excluded by Section 2.5 of the Agreement. Accordingly, the brief is irrelevant.

**B. The Alleged Breach of the Modification Agreement.**

The second group of claims relate to allegations that the defendants breached the modification agreement. *See* Second Am. Compl., ECF No. 27 ¶¶ 22–23, 25(d), 27, 33 (p. 12). Defendants argue that they are entitled to summary judgment on these claims because the failure to obtain Alfreda Turnbow's consent renders the modification agreement void. *See* Mem. at 12–17. The Court agrees.

"The parties to a contract are free to modify that contract *by mutual consent*." *Hershon v. Hellman Co.*, 565 A.2d 282, 283 (D.C. 1989) (emphasis added); *see also Duvall v. Bumbray*, 423 B.R. 383, 389 (D.D.C. 2010) ("Contracting parties are free to modify their original contract, but such modification requires mutual consent"). Moreover, "[t]he burden is on the party arguing that the contract has been modified to establish the elements of contract formation." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 173 (D.D.C. 2008). Plaintiff fails to shoulder this burden.

It is undisputed that James Covington and Alfreda Turnbow were party to the original mortgage documents. *See* Mortgage Note, ECF No. 62-2 at 4; Deed of Trust, ECF No. 62-3 at 2, 15; *Turnbow v. Anderson*, No. 2007-CA-5895, slip op. at 19–20 (D.C. Super. Ct. July 20, 2009). It is equally undisputed that Alfreda Turnbow was not party to the modification. *See* Modification, ECF No. 62-

4 at 1, 7. Nor is there evidence that Alfreda Turnbow's rights and obligations were ever assigned to Ronald Anderson, who was party to the modification. *See Anderson v. Turnbow*, No. 9-CV-905, slip op. at 1 (D.C. July 11, 2011).[8]

Accordingly, the loan modification was executed without the consent of an individual who was party to the underlying contract. This renders the modification invalid because "[t]erms added to a written contract after its execution without the assent of all the parties do not become part of the contract." *Craig v. Kessing*, 253 S.E. 2d 264, 266 (N.C. 1979); *see also Duvall*, 423 B.R. at 389; *Hershon*, 565 A.2d at 283. Accordingly, the Court **GRANTS** summary judgment to the defendants on all claims alleging a breach of the modification agreement.

### C. Plaintiff's Foreclosure-Related Claims.

The third group of claims are those that allege that defendants have violated various laws by bringing a foreclosure action. *See* Second Am. Compl., ECF No. 27 ¶¶ 20, 23, 25(d), 28,

---

[8] Despite the D.C. Court of Appeals's affirmance of the Superior Court's ruling that the alleged transfer of rights pursuant to a quitclaim deed was based on a fraud, Mr. Covington persists in relying on misguided quitclaim deeds. He attached to his opposition brief a deed that purports to convey "by first party Aquanetta Anderson to Ronald Anderson the second party, all of my interest which was granted to me by Alfreda Turnbow on June 23, 2006 in real property with address known as 7247 15th Place N.W." Pl.'s Ex. A, ECF No. 97-1 at 1. Even if the deed is authentic, it is irrelevant because Aquanetta Anderson had nothing to convey. *See Anderson v. Turnbow*, No. 9-CV-905, slip op. at 1 (D.C. July 11, 2011).

47, 50–51. Plaintiff has provided no evidence that a foreclosure has taken place, and has failed to rebut defendants' argument that no foreclosure is pending. *See* Mem. at 14–15.[9] In the absence of a foreclosure proceeding, plaintiff's foreclosure-related legal claims cannot stand. *Cf. Smith v. Midland Mortg.*, No. 13-706, 2014 WL 2767382, at *3 (D.D.C. June 19, 2014) (dismissing claim for wrongful foreclosure due to the absence of any past or pending foreclosure). Accordingly, the Court **GRANTS** summary judgment to the defendants on all foreclosure-related claims.

D.  **Plaintiff's Request for Declaratory Relief.**

The final legal claim that can be discerned from the Second Amended Complaint appears to request a declaratory judgment that the modification is enforceable and that defendants cannot enforce any of the loan documents. *See* Second Am. Compl., ECF No. 27 ¶¶ 21, 27–28, 46–53. Plaintiff states that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants, regarding their respective rights, duties and obligations under the . . . Loan Modification, Promissory Note, Deed of Trust, and related loan documentation." *Id.* ¶ 47.

---

[9] Plaintiff appears to concede that the possibility of foreclosure remains hypothetical. *See* Opp. at 19 ("The plaintiff . . . disagrees with the defendants['] argument . . . that there is no pending foreclosure on the said property. As a matter of fact, defendants are seeking to exercise their rights under the Deed of Trust and Note[,] which includes foreclosure.").

15

The Court is empowered to issue a declaratory judgment "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "To establish that a matter is a 'controversy' rather than an abstract question, a party seeking declaratory relief must 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 140 (D.D.C. 2009) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Defendants argue that "[w]hile Covington claims that a controversy exists as to whether the Lenders have a right to enforce . . . the Deed of Trust or Note, Covington does not clarify why he believes there currently exists an 'actual controversy.'" Mem. at 21. Plaintiff, however inartfully, connected his request for a declaration to his belief that the defendants cannot enforce the terms of the Loan because, he claims, they do not possess the note. *See* Second Am. Compl., ECF No. 27 ¶¶ 47, 49–51, 53.

Nonetheless, plaintiff is not entitled to the declaration he seeks. The Court has already found the modification agreement to be a legal nullity. *See supra* Part III.B. Furthermore, plaintiff failed to show that the defendants cannot enforce the terms of the original mortgage. He argues that they "rel[y] exclusively

on the pooling and servicing agreement to show that [they] were the holder of the [mortgage] note," Opp. at 11, but that is not true. Defendants have supplied ample proof that Deutsche Bank owns the loan in its capacity as trustee for the Trust. *See supra* at 2 & n.1. No evidence has been introduced to indicate that Deutsche Bank ever transferred ownership. JP Morgan Chase, moreover, has not only introduced evidence that it inherited WaMu's servicing rights, Purchase & Assumption Agreement, ECF No. 62-5 at 13, but also of its possession of the original note, endorsed in blank. Indeed, plaintiff concedes that he viewed the note in person, but persists in arguing that defendants cannot enforce it. *See* Opp. at 11.[10] This is misguided because "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument." D.C. Code § 28:3–203(b).[11]

---

[10] Plaintiff appears to understand the error of his argument. His opposition brief includes what appears to be an editor's comment, which states "there is evidence that they have the original note, as displayed in Annapolis. Maybe you can contend that there is no evidence that it was not stolen?" Opp. at 11. A similar comment appears mid-sentence later on: "the original promissory note (but it has, in Annapolis . . .) has not been produced, but a copy of the note." *Id.* at 20.

[11] The Court need not address plaintiff's allegations regarding infirmities in documents related to the Pooling and Servicing Agreement, Opp. at 8–10, because possession of the note is sufficient to show that defendants can enforce the terms of the loan. *Cf. Conant v. Wells Fargo Bank, NA*, No. 13-572, 2014 WL 369644, at *6 (D.D.C. July 25, 2014) (applying California law and holding that "the Court need not address the question of

Accordingly, defendants' rightful possession of the note endorsed in blank makes them "the rightful Note holder and a party that [can] properly enforce its provisions." *Leake v. Prensky*, 798 F. Supp. 2d 254, 257 (D.D.C. 2011).[12] Plaintiff therefore is not entitled to the declaration he seeks and the Court **GRANTS** summary judgment to defendants on this claim.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            July 30, 2014**

---

whether Plaintiff's loan was securitized—a fact disputed by the parties—because even if it was, 'the securitization of plaintiff's promissory note did not deprive defendants of the power to foreclose on the property.'").

[12] Plaintiff argues that that Loan cannot be enforced because its assignment was not properly recorded. *See* Opp. at 19. This dispute is immaterial because "District of Columbia law does not require an assignment of a note or deed of trust to be recorded in order for the transfer to be valid." *Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 104 (D.D.C. 2013).